IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia,             :
          Appellant       :
                      :
        v.             :
                      :  No. 479 C.D. 2017
Nancy Dugan             :  Submitted: November 13, 2018

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON       FILED: December 7, 2018

The City of Philadelphia (City) appeals from the December 20, 2016 order of the Court of Common Pleas of Philadelphia County (trial court) which disposed of Nancy Dugan's (Dugan) motion for partial summary judgment and the City's cross-motion for summary judgment. The order granted Dugan's motion, thereby dismissing count I of the City's complaint in its entirety and dismissing count II of the City's complaint to the extent that it sought subrogation of Dugan's salary and medical benefits paid pursuant to what is commonly known as the Heart and Lung Act.[1] The order denied the City's cross-motion for summary judgment in

---

[1] Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637-638. The Heart and Lung Act provides for the payment of full salary and all medical expenses to police officers and other public safety employees temporarily unable to perform their job because of a work-related injury. *City of Philadelphia v. Zampogna*, 177 A.3d 1027, 1029 (Pa. Cmwlth. 2017); *see* Section 1(a) of the Heart and Lung Act, 53 P.S. § 637(a).

part to the extent that it sought to subrogate the Heart and Lung benefits and the medical benefits it paid to Dugan. However, the order granted the City's cross-motion for summary judgment in part to the extent that the City sought to subrogate $27,889.90 paid for a specific loss pursuant to the Workers' Compensation Act.[2]

On January 7, 2014, while working as a police officer for the City, Officer Dugan was involved in a motor vehicle accident. Complaint ¶ 4. As a result of the accident, Dugan was not able to work as a City police officer. *Id.* ¶ 5. The City issued a notice of compensation payable (NCP) recognizing Dugan's injuries as compensable under the both the Workers' Compensation Act and the Heart and Lung Act.[3] *Id.* The NCP indicated that Dugan was entitled to weekly compensation at the rate of $929.66 based upon an average weekly wage of $1,394.49, and that the City would pay Dugan Heart and Lung benefits in lieu of workers' compensation benefits. *See id.*

Dugan subsequently settled a lawsuit against the driver of the other vehicle involved in the accident for $250,000.00. *Id.* ¶ 7. Thereafter, the City filed a declaratory judgment action against Dugan in the trial court, seeking to assert its lien against the settlement. The City alleged that, as of November 2, 2015, it asserted a lien in the amount of $104,785.50, representing medical benefits paid and Heart and Lung benefits paid, as well as $27,889.90 in workers' compensation specific

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

[3] Police officers and public safety employees entitled to Heart and Lung benefits are also entitled to benefits under the Workers' Compensation Act. *Zampogna*, 177 A.3d at 1029. However, the employee must turn over and pay into the public employer's treasury any workers' compensation payments collected. Section 1(a) of the Heart and Lung Act, 53 P.S. § 637(a). "Self-insured public employers that pay Heart and Lung benefits do not make workers' compensation payments because they would simply be returned to the employer." *Zampogna*, 177 A.3d at 1029. "Nevertheless, self-insured public employers issue a notice of compensation payable to employees receiving Heart and Lung benefits." *Id*.

2

loss benefits paid. *Id.* at 10. Count I asserted a common law right to subrogation. *Id.* at count I. Count II, alternatively, asserted a right to subrogation pursuant to Article III of the Workers' Compensation Act. *Id.* at count II. Dugan filed an answer and new matter. Reproduced Record (R.R.) at 25a-37a.

Dugan then filed a motion for partial summary judgment seeking judgment in her favor with respect to the City's attempt to subrogate her Heart and Lung benefits and medical benefits. R.R. at 44a. Dugan did not challenge the City's claim for subrogation of the workers' compensation specific loss benefits. The City filed an answer along with a cross-motion for summary judgment (Cross-Motion). Thereafter, the trial court granted Dugan's motion for partial summary judgment, dismissing count I of the City's complaint in its entirety, and dismissing count II to the extent it sought subrogation of Dugan's Heart and Lung benefits and medical benefits. The trial court granted in part and denied in part the City's Cross-Motion. The trial court denied the City's Cross-Motion to the extent that it sought to subrogate the Heart and Lung benefits and the medical benefits it paid to Dugan. The trial court granted the City's Cross-Motion to the extent that the City sought to subrogate $27,889.90 paid as specific loss benefits pursuant to the Workers' Compensation Act. The City now appeals to this Court, arguing that the trial court erred in denying the City's claim for subrogation of the Heart and Lung benefits paid to Dugan.[4]

Before we address the merits of the City's arguments, we must address the nature of the trial court's order. By order dated May 11, 2017, this Court asked

---

[4] In reviewing a motion for summary judgment, our scope of review is plenary and our standard of review requires that we affirm the trial court's order only where the record, when viewed in the light most favorable to the non-moving party, clearly shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pa. State Ethics Comm'n*, 894 A.2d 174, 176 (Pa. 1999).

the parties to address whether the underlying order was final and appealable. After reviewing the parties' arguments, we agree that the trial court's order is final and appealable because it disposed of all of the claims. *See* Pa.R.A.P. 341(b)(1) (stating a final order is one that disposes of all claims and all parties). The City's Complaint set forth two counts. The trial court's order dismissed count I in its entirety. With respect to count II, the trial court partially dismissed it to the extent it sought subrogation of Dugan's Heart and Lung benefits and medical benefits, and granted the City relief with respect to the balance of count II to the extent that it sought subrogation of Dugan's specific loss benefits in the amount of $27,889.90. The trial court's order resolved all claims. Therefore, the order was final and appealable.

Turning to the parties' arguments, the City first argues that the 1990 Amendments to the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL)[5] restored an employer's common law right to subrogation for Heart and Lung benefits paid to eligible employees for injuries arising out of the use or maintenance of an automobile. Appellants argue that the 1990 amendments to the MVFRL replaced the phrase "benefits in lieu thereof paid or payable" in Section 1720 with the phrase "benefits paid or payable by a program, group contract or other arrangement whether primary or excess under section 1719 (relating to coordination of benefits").[6] Appellants contend that this amendment removing the "in lieu

---

[5] 75 Pa. C.S. §§ 1701-1799.7.

[6] The enacted 1984 version of Section 1720 stated:

> In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits available under Section 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating

4

thereof" language reinstated a municipality's right to assert claims of subrogation. The City contends that the anti-subrogation provision of Section 1720 of the MVFRL now only applies to benefits available under Sections 1711 (relating to required benefits), 1712 (relating to availability of benefits), 1715 (relating to availability of adequate limits) and 1719 (relating to coordination of benefits) of the MVFRL. Moreover, the City claims that Heart and Lung benefits are not among those that are *not* recoverable in a third-party action against a tortfeasor and/or uninsured/underinsured motorist claim as prescribed in Section 1722 of the MVFRL.[7]

---

> to availability of adequate limits) or benefits in lieu thereof paid or payable under Section 1719 (relating to coordination of benefits).

Former 75 Pa. C.S. § 1720.

In 1990, the General Assembly amended Section 1720, replacing the language "benefits in lieu thereof paid or payable" with "benefits paid or payable by a program, group contract or other arrangement whether primary or excess[.]" *See* Act of February 7, 1990, P.L. 11, No. 6, § 9. Section 1720 now provides:

> In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits available under section 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) or benefits paid or payable by a program, group contract or other arrangement whether primary or excess under section 1719 (relating to coordination of benefits).

75 Pa. C.S. § 1720.

[7] Section 1722 prohibits a plaintiff from recovering in any action against a tortfeasor benefits such as workers' compensation "or any program, group contract or other arrangement for payment of benefits as defined in Section 1719." 75 Pa. C.S. § 1722.

5

This Court addressed these same arguments in *City of Philadelphia v. Zampogna*, 177 A.3d 1027 (Pa. Cmwlth. 2017).[8] Our decision in *Zampogna* reviewed the three statutes governing a public employer's subrogation claim against an employee's third-party tort recovery for his work injury caused by a motor vehicle accident and analyzed the 1990 amendments to the MVFRL.[9] We need not revisit that history and analysis here. This Court has since issued decisions following and applying *Zampogna*.[10] Further, in *City of Philadelphia v. Workers' Compensation Appeal Board (Tucker)* (Pa. Cmwlth., No. 1618 C.D. 2017, filed June 26, 2018), this Court rejected the argument that *Zampogna* was wrongly decided and declined an invitation to overrule that case. *See Tucker*, slip op. at 8 & 13. In short, this Court held that (i) the anti-subrogation provision of the MVFRL prohibits subrogation of Heart and Lung benefits; and (ii) the 1990 MVFRL amendment did not restore a public employer's right to subrogate Heart and Lung benefits from an employee's tort recovery arising from a motor vehicle accident. *Zampogna*, 177 A.3d at 1038.

Further, we are not persuaded by the City's argument that prohibiting subrogation conflicts with the legislative purpose of the Heart and Lung Act. The City argues that allowing a municipality to subrogate for Heart and Lung benefits will prevent double recovery by a plaintiff and will also prevent financial harm to

---

[8] We note that the City was also a party in *Zampogna*. Although this Court issued its decision in *Zampogna* prior to the City filing its brief in this matter, the City's brief does not mention our *Zampogna* decision.

[9] The three statutes are the Workers' Compensation Act, the Heart and Lung Act and the MVFRL.

[10] This Court has since followed the ruling in *Zampogna* in the unreported decisions of *City of Philadelphia v. Workers' Compensation Appeal Board (Tucker)* (Pa. Cmwlth., No. 1618 C.D. 2017, filed June 26, 2018) and in *City of Philadelphia v. Hargraves* (Pa. Cmwlth., No. 1928 C.D. 2016, filed Feb. 28, 2018) (en banc).

6

the public employer, as it is unjust to make the public treasury bear the burden when the burden should be borne by the tortfeasor. Even accepting for the sake of argument that inequities result,[11] this Court has previously rejected a policy argument of inequities and declined, in this context, to extend the MVFRL beyond its terms based on such an argument, as policy considerations are a matter for the General Assembly. *See Tucker* (rejecting the City's assertions regarding the potential for double recovery and declining to extend the MVFRL beyond its terms based on a policy argument of inequities, as that is a matter for the General Assembly).[12] Thus, the 1990 amendments to the MVFRL did not restore an employer's common law right to subrogation for Heart and Lung benefits paid to employees for injuries arising out of the use or maintenance of an automobile, and the City cannot subrogate under this theory as a matter of law.

Alternatively, the City argues that Section 319 of the Workers' Compensation Act authorizes the City to subrogate to the extent of all benefits paid or payable pursuant to Article III of the Workers' Compensation Act. The City

---

[11] Contrary to Employer's assertion, this Court's precedent states that Section 1722 includes Heart and Lung benefits and precludes a plaintiff involved in a motor vehicle accident from recovering those benefits from the responsible tortfeasors. *See Commonwealth v. Workers' Comp. Appeal Bd. (Piree)*, 182 A.3d 1082, 1089 (Pa. Cmwlth. 2018) (stating that "the reason Heart and Lung benefits are not subject to subrogation is because Section 1722 of the MVFRL, 75 Pa. C.S. § 1722, precludes plaintiffs from recovering those benefits from the responsible tortfeasors"); *Zampogna*, 177 A.3d at 1038-39 (stating that a "plaintiff may not include the receipt of Heart and Lung benefits as an item of damages in its tort [claim] against a third party with liability for a work-related motor vehicle accident"); *Stermel v. Workers' Comp. Appeal Bd. (City of Phila.)*, 103 A.3d 876, 879 (Pa. Cmwlth. 2014) (stating Section 1722 prohibits a plaintiff injured in a motor vehicle accident from recovering from the third-party tortfeasor lost wages covered by workers' compensation or Heart and Lung benefits); *see also Pa. State Police v. Workers' Comp. Appeal Bd. (Bushta)*, 184 A.3d 958, 968 (Pa. 2018) (stating that the claimant "was precluded from recovering his lost wages and medical benefits from the tortfeasors under the MVFRL because [c]laimant's wages and medical benefits were fully covered by the Heart and Lung Act").

[12] While this Court's unreported memorandum opinions may not be cited as binding precedent, they may be cited for persuasive value. 210 Pa. Code § 69.414(a).

7

argues that once an NCP is issued, benefits are *payable* pursuant to Article III of the Workers' Compensation Act. The City argues that compensation was *payable* to Dugan in the amounts set forth in the NCP, not just for the specific loss benefits. Further, the City contends that medical benefits paid pursuant to the Heart and Lung Act are subject to re-pricing under the Workers' Compensation Act; therefore, medical benefits paid are compensation *payable* under the Workers' Compensation Act.

In *Zampogna*, this Court rejected the City's argument that Section 319 of the Workers' Compensation Act authorizes the City to subrogate against a third-party tortfeasor to the extent of the compensation payable under Article III of the Workers' Compensation Act. *Zampogna*, 177 A.3d at 1038 (holding that an employer "may not subrogate a portion of Heart and Lung benefits under the artifice that those benefits are payable as workers' compensation benefits"); *see Stermel v. Workers' Comp. Appeal Bd. (City of Phila.)*, 103 A.3d 876, 883 (Pa. Cmwlth. 2014) (rejecting the argument that the issuance of a notice of compensation payable transforms Heart and Lung benefits into workers' compensation benefits, stating the two are separate).

Recently, in *Pennsylvania State Police v. Workers' Compensation Appeal Board (Bushta II)*, 184 A.3d 958 (Pa. 2018),[13] our Supreme Court addressed whether a self-insured municipality is entitled to subrogation to the extent of compensation *payable* pursuant to the Workers' Compensation Act where the municipality has concurrent obligations to the injured employee under both the Workers' Compensation Act and the Heart and Lung Act. Our Supreme Court stated that if the claimant does not actually receive or collect workers' compensation

---

[13] The City filed its brief before the Supreme Court decided *Bushta II*.

benefits, there can be no basis for subrogation. *Id.* at 966. Our Supreme Court held that the "mere acknowledgment in an NCP of a work injury and the specification of the amount of benefits to which an injured employee would be entitled" under the Workers' Compensation Act does not transform Heart and Lung benefits into workers' compensation benefits. *Id.* at 969. Further, the Supreme Court rejected the argument that use of the re-pricing formula set forth in the Workers' Compensation Act meant that such medical payments constituted compensation payable under the Workers' Compensation Act. *Id.* Our Supreme Court reasoned that because payment of the claimant's medical care and treatment is required under the Heart and Lung Act, those payments constituted a Heart and Lung Act benefit, regardless of the pricing scheme used. *Id.*

Here, the City's complaint alleged that the NCP indicated that the City would pay Dugan Heart and Lung benefits in lieu of workers' compensation benefits. Complaint ¶ 4. The City also alleged that it paid Dugan $21,757.66 in Heart and Lung Act "injured on duty" benefits, $62,391.39 in medical benefits and $27,889.90 in workers' compensation specific loss benefits for scarring. *Id.* ¶ 9. Excepting the $27,889.90 in specific loss benefits, which are not challenged on appeal, the City's complaint did not allege that the City actually paid Dugan, or that Dugan actually received, any workers' compensation benefits. Therefore, there is no basis for subrogation of the Heart and Lung Act "injured on duty" benefits and medical benefits the City paid to Dugan. *See Bushta II; see also Commonwealth v. Workers' Comp. Appeal Bd. (Piree)*, 182 A.3d 1082, 1083 & 1089 (Pa. Cmwlth. 2018) (holding that the Commonwealth, as the employer, was not entitled to subrogate for Heart and Lung benefits an employee received during a period for

9

which the employee was entitled to both Heart and Lung benefits and workers' compensation benefits).

Finally, the City argues that the trial court failed to fully address the City's arguments regarding equal protection. The City claims that if Dugan was a police officer of a municipality that maintained workers' compensation insurance through an outside vendor, then the City would have been reimbursed two-thirds of the amount of the benefits paid to Dugan for the period during which the City paid Dugan the full salary amount, regardless of whether the vendor/insurer paid the benefits directly to Dugan and she returned the payment to the City or the vendor/insurer paid the workers' compensation amount directly to the City. The City claims that because it elected to self-insure and not to maintain workers' compensation insurance through an outside vendor, it must forego reimbursement. The City claims its election is the only difference in the two scenarios and that there is no other difference that justifies treating a self-insured municipality differently from one that maintains workers' compensation insurance through an outside vendor.

We reject the City's argument that prohibiting subrogation in these circumstances runs afoul of equal protection concerns because it treats a self-insured municipality different than an insured municipality. In *Oliver v. City of Pittsburgh*, 11 A.3d 960 (Pa. 2011) (*Oliver II*), our Supreme Court granted review to consider whether a restoration of employer subrogation rights arising from payment of workers' compensation benefits also afforded public employers a right of subrogation for benefits paid under the Heart and Lung Act. *Id.* at 961. The court determined there was no right of subrogation. *Id.* at 966. When the same issue was before this Court, we allowed subrogation, reasoning that it would be unreasonable

to protect only private interests and to permit a private employer that has paid workers' compensation benefits to subrogate against a third-party recovery for injuries sustained in a motor vehicle accident, while holding that a public employer that has paid Heart and Lung benefits under the same circumstance could not subrogate. *Oliver v. City of Pittsburgh*, 977 A.2d 1232, 1241 (Pa. Cmwlth. 2009), *rev'd*, *Oliver II*. Our Supreme Court disagreed, however, and did not consider such an approach to be unreasonable. *Oliver II*, 11 A.3d at 966. The Supreme Court's reasoning recognized that the Heart and Lung Act treats public-safety employees in essential high-risk professions more favorably. However, that was not its only reason. The Supreme Court also stated:

> [s]ignificantly, the MVFRL's remedial scheme has become increasingly complicated, in light of the need to address premium costs while maintaining financial viability in the insurance industry. The Legislature has made numerous specific refinements impacting the competing, and legitimate, rights and interests of insurers, employers, and injured persons. In this landscape, where there are mixed policy considerations involved, we decline to extend clear and specific refinements beyond their plain terms.

*Id.* at 966.

We acknowledge that the Supreme Court's reasoning regarding the more favorable treatment of public employees under the Heart and Lung Act does not apply to the City's argument here, as both of the City's scenarios concern a public employer. However, we find the Supreme Court's additional reasoning to be applicable and persuasive. Indeed, in *Stermel*, which also involved the City, the Workers' Compensation Appeal Board (Board) found that the City was entitled to subrogate a portion of the Heart and Lung benefits it paid to the claimant from the

11

claimant's third-party tort claim settlement. 103 A.3d at 877. The Board's decision focused, in part, on fairness, reasoning that it was unfair and unreasonable to treat a self-insured public employer differently than an insured public employer. *Id.* at 882 & 885. This Court reversed the Board's decision. Before this Court, the parties did not present their arguments in terms of an "equal protection" claim. Nonetheless, in reversing the Board, we noted that in *Oliver II*, our Supreme Court rejected this Court's reasoning, which has focused on the public employer and, instead, focused on the preferential treatment of public safety employees. We held that the Board likewise erred in focusing on the impact on the employer. *Stermel*, 103 A.3d at 885. We stated, "[o]nly the legislature may undertake further refinements and eliminate the distinction between the self-insured public employer and the public employer who [sic] purchases an employer's liability policy of insurance."[14] *Id.* at 886.

Our recent decision in *DeHoratius v. Workers' Compensation Appeal Board (Upper Darby Township)*, 187 A.3d 273 (Pa. Cmwlth.), *appeal denied*, 187 A.3d 911 (Pa. 2018), presents an instructive analogy. In *DeHoratius*, we considered whether the public employer was entitled to subrogation where the employer was self-insured for both Heart and Lung benefits and workers' compensation benefits and one of its police officers was injured in a work-related motor vehicle accident. *Id.* at 274. The employer paid Heart and Lung benefits. *Id.* The employer also paid workers' compensation indemnity benefits pursuant to an NCP; the claimant signed the workers' compensation indemnity checks and returned them to the employer as required by law. *Id.* The employer also paid medical benefits under the NCP. *Id.* The employer did not dispute that it was not entitled to subrogation for the lost wages

---

[14] Nonetheless, any "perceived unfairness or disparate treatment does not exist in every case. Self-insured employers paying Heart and Lung benefits are only precluded from subrogating against a third party recovery where the injury involves a motor vehicle." *Stermel*, 103 A.3d at 885 n.15.

12

it paid the claimant under the Heart and Lung Act. *Id.* at 275. However, the employer claimed that because it paid the claimant indemnity and medical benefits from its workers' compensation account, it was entitled to subrogation for those benefits from the claimant's third-party tort recovery. *Id.* We agreed with the claimant that it was irrelevant that the employer chose to pay the claimant's benefits from its workers' compensation account. *Id.* We noted that it appeared that the employer was "seeking to use its accounting method of separating the Heart and Lung benefits from the [workers' compensation] benefits as the basis to establish subrogation rights." *Id.* at 276. We stated that the Heart and Lung Act provides for wage and medical benefits. *Id.* Further, the claimant was required to endorse his workers' compensation checks to employer. *Id.*; *see* 53 P.S. § 637(a). We further noted that it appeared that the employer was the party "seeking double recovery by requesting subrogation of these same payments." *DeHoratius*, 187 A.3d at 276. We held that the employer could not subrogate against the claimant's third-party recovery. *Id.*

This court subsequently followed *DeHoratius* in the unreported decision of *Upper Darby Township v. Workers' Compensation Appeal Board (Dockery)*, (Pa. Cmwlth. No. 647 C.D. 2018, filed October 11, 2018). *Dockery* involved the same Township and similar facts as in *DeHoratius*.[15] This Court followed its ruling in *DeHoratius* but further noted that its decision was supported by *Bushta II*, which had been issued in the interim, and held that if the claimant does not actually receive or collect workers' compensation benefits, there can be no basis for subrogation. *Dockery*, slip op. at 14-15. We stated that the claimant in *Dockery*

---

[15] The municipality was still self-insured for workers' compensation purposes and the workers' compensation checks were paid out of the employer's funds; however, instead of paying the workers' compensation benefits from the employer's account, the check was actually written by a third-party administrator. *Dockery*, slip op. at 3-4.

13

"did not *actually receive or collect* any workers' compensation benefits; rather, [the] [e]mployer required him to endorse all of his workers' compensation checks to [the] [e]mployer." *Id.* at 15-16. Consequently, we held there was no basis for subrogation.

Similarly, here, an employer who chooses to purchase workers' compensation insurance is, in effect, setting up a separate account from which to pay workers' compensation benefits, *i.e.*, its insurance coverage. This is a contractual relationship between the public employer and the insurance company, one which the municipality voluntarily enters into by its own choice, *i.e.*, its decision to self-insure or to purchase insurance through an outside vendor. If the insurance company is to pay workers' compensation benefits while the employee is concurrently receiving Heart and Lung benefits, "the Heart and Lung Act requires the employee to turn over to the employer all workers' compensation benefits received or collected."[16] *Bushta II*, 184 A.3d at 966 (internal quotation marks omitted); *see* 53 P.S. § 637(a). Thus, the employee would not *actually receive or collect* any workers' compensation benefits, and consequently, there would be no basis for subrogation. *See Dockery*, slip op. at 15-16.

Further, when a municipality purchases insurance, the insurance company stands in the shoes of the municipality as the employer. *See Risius v. Workers' Comp. Appeal Bd. (Penn State Univ.)*, 922 A.2d 72, 76 (Pa. Cmwlth. 2007). The insurance carrier would have the same right to subrogation as the

---

[16] Indeed, in *Bushta II* our Supreme Court acknowledged that its precedent recognizes that an injured employee who is receiving benefits under the Heart and Lung Act may seek benefits under the Workers' Compensation Act for *concurrent employment*; however, the Supreme Court stressed that such precedent "'should not be read to imply that an injured employee can, in good faith, seek workers' compensation benefits *for the same job* that gives rise to Heart and Lung benefits.'" *Bushta II*, 184 A.3d at 966 (emphasis added) (quoting *City of Erie v. Workers' Comp. Appeal Bd. (Annunziata)*, 838 A.2d 598, 606 n.8 (Pa. 2003)).

14

employer. *See id.* (stating, "although Section 319 of the [Workers' Compensation] Act does not include the term insurance carrier, if an employer has an insurance carrier, such carrier would have subrogation rights"); *cf.* section 401 of the Workers' Compensation Act, 77 P.S. § 701 (defining "employer" to include an insurer if such insurer has assumed the employer's liability). Consequently, where the public employer would have no right to subrogation, its insurance carrier that has those *same* rights (and nothing more) also would not be able to subrogate. It is the nature of the benefits for which subrogation is sought, *i.e.,* are they Heart and Lung benefits or workers' compensation benefits, that is critical to the determination of whether a right of subrogation exists, not who is paying the benefits or whether the benefits are being paid from a "separate account." Therefore, under these circumstances, this situation is no different than that in *DeHoratius*, and the carrier could not subrogate against the third-party tort recovery.

"The first step in an equal protection inquiry is to determine whether the statute creates a classification for the unequal distribution of benefits or imposition of burdens." *Caputo v. Workers' Comp. Appeal Bd. (Commonwealth)*, 34 A.3d 908, 913 (Pa. Cmwlth. 2012). Notably, under the scenario as presented by the City --- that if Dugan was a police officer of a municipality that maintained workers' compensation insurance through an outside vendor, then the City would have been reimbursed two-thirds of the amount of the benefits paid to Dugan for the period during which the City paid Dugan the full salary amount, regardless of whether the vendor/insurer paid the benefits directly to Dugan and she returned the payment to the City or the vendor/insurer paid the workers' compensation amount directly to the City --- the City does not claim that it would be reimbursed two-thirds of any benefits paid *because of any right of subrogation*; rather, it would be receiving

15

the two-thirds "reimbursement" by virtue of having entered into a private contractual relationship by electing to purchase insurance. This is not something subject to a claim of equal protection.[17] The City's argument has nothing to do with equal protection and is specious.

For the foregoing reasons, the City was not entitled to subrogate Heart and Lung benefits and medical benefits paid to Dugan, as a matter of law. Consequently, no genuine issues of material fact existed. Therefore, the trial court did not err in granting Dugan's motion for partial summary judgment with respect to count I and dismissing count I of the City's complaint in its entirety. The trial court also did not err in granting Dugan's motion for partial summary judgment in part with respect to count II and dismissing count II to the extent that it sought subrogation of Heart and Lung benefits and medical benefits paid to Dugan.

Accordingly, we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[17] *See* U.S. Const. amend. XIV § 1 (stating no state shall deny equal protection of the law to any person within its jurisdiction); Pa. Const. art. I § 1.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia,                    :
                Appellant        :
                               :
        v.                           :
                               :   No. 479 C.D. 2017
Nancy Dugan                              :

## O R D E R

AND NOW, this 7th day of December, 2018, the December 20, 2016 order of the Court of Common Pleas of Philadelphia County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge